SWENSON, Administrator, Respondent, vs. VAN HARPEN
and another, Appellants.

*December 8, 1938—March 7, 1939.*

For the appellants there were briefs by *Quarles, Spence & Quarles,* attorneys, and *Kenneth P. Grubb* and *Lawson Adams* of counsel, all of Milwaukee, and oral argument by *Mr. Grubb.*

*Leonard F. Schmitt* of Merrill, for the respondent.

The following opinion was filed January 10, 1939:

NELSON, J. There is little, if any, dispute as to the material facts involved in this unfortunate accident. In order that our decision may be clearly understood it will be necessary to state the facts quite fully. State Trunk Highway No. 86 is an east-and-west highway. On May 5, 1937, it was a graveled road, the bed of which was about twenty-six feet wide. Near to the place of the accident, a town road ran to the north from Highway No. 86. This road was a dirt road, the bed of which was ten feet four inches wide. It was little traveled as it served only one family. The Mitchell school was located to the north of Highway No. 86 and to the west of the town road mentioned. Commencing at about the south fence line of the school grounds, a driveway angled off from the town road in a northwesterly direction through a twelve-foot-five-inch gate into the school grounds. Along the north side of Highway No. 86 and to the south of the school grounds there was a ditch about fourteen feet wide which extended easterly to within a few feet of the roadbed of the town road.

The defendant, Van Harpen, was employed by the Mitchell school district and by another school district, located about three miles east of the Mitchell school, to transport

certain pupils to and from the schools mentioned. He owned and operated a bus. The bus in question was about five feet six inches wide, five feet eight inches high, and about eighteen feet long. On the day in question, Van Harpen approached the Mitchell school from the east. Two or three children from the other school were in the bus at the time he arrived at the Mitchell school. Arriving at the Mitchell school, he turned his bus to the right side of Highway No. 86 and stopped it so that its right wheels were very close to the ditch mentioned, and so that the rear end of his bus was about in the middle of the town road. He shut off his motor and waited for the children he was to transport to come out of school. Van Harpen remained in the cab of his bus. Some time after stopping his bus, the rear door of the bus was opened, probably by one of the children then riding in the bus. Albert and one or two other pupils were playing in the schoolyard at the time of the arrival of the bus. Albert lived about a mile and a half to the east of the Mitchell school and was not one of the children whom Van Harpen transported. After the bus had been stopped for from two to four minutes, Van Harpen saw a truck driven by Miller and loaded with about a ton of hay approaching from the west. As it approached the bus he called to the children to watch out because a truck was coming. In the meantime, Albert and a little girl, Annabelle, had emerged from the school gate and had reached a place near certain mailboxes located on the north side of Highway No. 86, about twenty feet from the rear of the bus. Annabelle heard Van Harpen say: "Lookout there comes a truck" and she looked up the road and saw the truck. She also called to Albert about the truck. Albert, without any apparent reason for so doing, started to run across Highway No. 86 while the truck was approaching in close proximity to him. The Miller truck was being driven at a speed estimated by Miller

and his companion to be between fifteen and twenty miles per hour. When Miller observed Albert running across the road he turned his truck slightly to the left but struck Albert somewhere near the middle of Highway No. 86. At the time Albert was eleven years of age and concededly subnormal mentally. He had spent two years in the first grade, two years in the second grade, and, at the time of the accident, had been returned to the first grade.

The defendants contend that there is no evidence to support the findings of the jury that the defendant, Van Harpen, was negligent, and that if he was negligent, his negligence was not a proximate cause of the death of Albert. The plaintiff, on the other hand, contends that the proven facts presented jury questions and that the verdict of the jury should not be disturbed. In determining the questions, we shall consider the plaintiff's several contentions which are made in support of the verdict. The plaintiff first contends that the jury was warranted in finding Van Harpen negligent because he stopped his bus on Highway No. 86 instead of temporarily turning his bus into the school driveway and then backing up to the north into the town road, or instead of driving four or five feet farther west on Highway No. 86, so that the back of his bus would have been even with the east side of the town road rather than in the center thereof. It is true that the situation was such as to have permitted the defendant to take either of the alternative courses suggested, but we cannot see how the pursuit of any one of such suggested courses would have been any less dangerous to children within the school grounds or emerging therefrom. Stopping his bus where he did was obviously fraught with as little danger to the children as pursuing any other of the suggested courses. We think, as a matter of law, that the finding of negligence by the jury cannot be based upon the

failure of Van Harpen to pursue either of the alternative courses suggested by the plaintiff.

The plaintiff next contends that the jury was warranted in finding Van Harpen guilty of negligence because he failed to get out of the bus after stopping so as to watch and supervise the children who were emerging from the school-yard. There is no suggestion in the evidence that it was his duty to do so, that he ever had been instructed or requested to do so, or that his employers, the school boards, had suggested to him that he so act. We consider that the finding of negligence by the jury cannot be grounded upon Van Harpen's failure to get out of the bus and to watch and supervise the children.

The plaintiff next contends that Van Harpen was guilty of negligence as a matter of law because he parked, stopped, or left his bus standing, whether attended or unattended, upon the highway which was outside a business or residence district when it was practical to park, stop, or leave it standing off the roadway of such highway. Sec. 85.19 (1), Stats. Stopping his bus so that its left side slightly invaded the roadway of Highway No. 86, did constitute a violation of that statute, but cannot be said to have been a proximate cause of the death of Albert.

The plaintiff next contends that in stopping his bus where he did, Van Harpen violated sec. 85.19 (3) (a), Stats., which prohibits the operator of a vehicle to stop, stand, or park such vehicle "within an intersection of highways." While the defendant may have violated that statute in stopping, standing, or parking his bus within the intersection of Highway No. 86 and the town road, it is clear that such violation was not a proximate cause of Albert's death.

The plaintiff next contends that Van Harpen was guilty of negligence as a matter of law in parking his bus where he

did because in so doing he violated sec. 85.19 (4) (f), Stats., which provides:

"(4) *Parking prohibited in specified places.* It shall be unlawful for the operator of a vehicle to park such vehicle in any of the following places except to comply with the directions of a traffic officer or traffic control signal or sign: . . .

"(f) Upon the near side of a highway adjacent to a schoolhouse during the hours of 7:30 a. m. to 4:30 p. m. . . ."

"Parking" is defined by sec. 85.10 (30), Stats., as follows:

"The stopping or standing of a vehicle, whether occupied or not, upon a highway otherwise than (a) temporarily for the purpose of and while actually engaged in loading or unloading, (b) when making necessary repairs, or (c) in obedience to traffic regulations or official traffic signs or signals."

While the defendant was not actually engaged in loading or unloading his bus at the time of the accident, he was actually waiting for that purpose. The words "in loading or unloading" must be given a reasonable construction. If the construction contended for by the plaintiff is correct, a driver of a school bus would have no right to stop his bus on the near side of a highway adjacent to a schoolhouse during the hours of 7:30 a. m. to 4:30 p. m. unless the children whom he was to transport were all assembled ready to be immediately loaded into the bus. A stop for a minute while waiting for the children, would, if plaintiff's contention is sound, constitute a violation of that statute by a driver of a school bus. We cannot give to the statute any such unreasonable construction. In *Wonewoc v. Taubert,* 203 Wis. 73, 78, 233 N. W. 755, it was said:

"Use of the streets for the purpose of travel incidentally and as a matter of course includes the right to stop at the curb for the purpose of taking in or letting out passengers or occupants of the car or for the purpose of loading or

unloading merchandise or products. This use of the street is an incident of public travel and is in no sense 'parking.' No village has authority to prohibit such reasonable stopping of cars at the curb of its streets for the purposes above mentioned. When, however, a car is stopped at the curb of a street where parking is prohibited for a length of time greater than is reasonably required for purposes incidental to public travel hereinbefore mentioned, it then becomes a 'parking' of the car and within the prohibitions of a no-parking ordinance."

The right of users of the street to park their cars as an incident to public travel was there recognized. We consider that the legislature intended by enacting sec. 85.19 (4) (f), Stats., to prohibit an unreasonable stopping of cars or the parking of cars for a time greater than is reasonably required for the purposes incidental to public travel, including a reasonable time for loading or unloading property or persons. While a school bus is not specifically exempted from the provisions of the statute, the conclusion would be unwarranted that the legislature intended that a school bus engaged in performing the service of transporting school children should stop on the opposite side of a highway thereby exposing the children to all the hazards of crossing the highway in order to enter such a bus. It is our conclusion that the defendant did not violate sec. 85.19 (4) (f).

The plaintiff further contends that the position of the bus constituted causal negligence because the view of those who might pass immediately to the rear of the bus, intending to cross Highway No. 86, was blocked, cut off, or interfered with. It is argued that the facts here render applicable the rule laid down in *Milbury v. Turner Centre System,* 274 Mass. 358, 174 N. E. 471, and *Winsky v. De Mandel,* 204 Cal. 107, 266 Pac. 534. The *Milbury Case* involved a city ordinance which prohibited the stopping or standing of vehicles within intersections of any street or within ten feet of a

street corner. The truck there involved was left standing so as to leave only about two feet and nine inches of clear roadway to the nearest car rail in Boston street. A child who started to cross the street, with no opportunity to view oncoming traffic until beyond the truck, was struck and injured. In that case the negligence of the owner of the truck was sustained. In the *Winsky Case,* an ordinance was likewise involved which made it unlawful for any person to leave standing any automobile or other vehicle in such position at any intersection of the streets as to obstruct the passage of pedestrians at the crossings thereon. Liability was likewise there sustained. The rule of those cases can hardly be applied to the facts here where there was no crosswalk or anything corresponding to it, and where Albert started to run across the highway from a point located twenty to twenty-four feet back of the bus. Applying a straightedge to the map or plat introduced in evidence reveals that from the point near the mailbox where Albert started to run across the street, his vision, had he looked, would have covered a considerable distance to the west and increased materially as he approached the north side of the traveled portion of Highway No. 86. There can be, therefore, no basis for a finding of causal negligence grounded upon the position of the bus.

Every case involving the death of a child naturally gives rise to feelings of sympathy for the bereaved parents, but we cannot let our sympathies rule our judgments.

In view of our conclusions, it becomes unnecessary to discuss the damages assessed or the errors which the defendants contend were committed upon the trial.

*By the Court.*—Judgment reversed, and the cause remanded with directions to dismiss the complaint.

A motion for a rehearing was denied, with $25 costs, on March 7, 1939.